United States District Court
Western District of Texas
Midland/Odessa Division

| United States of America,<br>   Plaintiff, | |
|---|---|
| v. | No. 7:09-CR-75 |
| Paul Joseph Galvez,<br>   Defendant. | |

**Government's Response to Defendant's Sentence-Reduction Motion**

Defendant, Paul Joseph Galvez, is currently serving a prison term based on his conviction for enticement of a minor in violation of 18 U.S.C. § 2422(b). Relying in part on the COVID-19 pandemic, he has moved under 18 U.S.C. § 3582(c)(1)(A) for a reduction in his term of imprisonment.

For two independent reasons, this Court should deny Defendant's motion. First, Defendant has failed to show he is not a danger to any other person or the community. Second, Defendant has failed to show that the statutory sentencing factors outlined in 18 U.S.C. § 3553(a) support a reduced prison term. This Court should also deny Defendant's alternative request for an order directing BOP to place him in home confinement.

**Background**

    **A.**    **Defendant's Offense, Criminal History, and Sentence**

In 2009, Defendant was convicted of enticement of a minor, in violation of 18 U.S.C. § 2422(b). (PSR ¶¶ 1, 3, Judgment, ECF No. 37.) From on or about September 2006 through January 2007, Defendant used an online Yahoo database to talk to, exchange pictures with, and arrange a meeting with an underage boy from Jal, New Mexico. (*Id.* at ¶ 10.) On at least two occasions, Defendant traveled from Texas to New Mexico in the hopes of meeting the boy for sexual activities. During the first such visit, Defendant originally waited in the vehicle while the boy finished up his shower. However, as the boy was finishing, Defendant entered the house and walked into the shower with the boy. (*Id.* at ¶ 12.) The boy pushed Defendant away and asked him

to leave his mother's house. (*Id.*) During a subsequent encounter, Defendant returned to the boy's home. In the boy's bedroom, Defendant "exposed" the boy's genitals and held the boy's hands using some force. (*Id.* at ¶ 16.) Understandably, the boy felt as though he was about to be raped. (*Id.*) Defendant also admitted giving the boy a "little head job," which investigators believe referred to oral sex. (*Id.* at ¶ 10.) During a subsequent investigation of Defendant and his online conduct, police discovered 225 suspected images of child pornography and one video, all involving boys between the ages of nine and sixteen. (*Id.* at ¶ 11.) The video and images, some of which included Defendant himself, depicted the children engaging in all manner of sexual conduct, including vaginal and anal penetration, oral sex, bondage, and being ejaculated on. (*Id.*) Defendant was charged with enticement of a minor, travel with intent to engage in illicit sexual conduct, and possession of material depicting minors engaged in sexually explicit conduct. (*Id.* at ¶ 1.) Defendant ultimately pleaded guilty to the enticement count on June 18, 2009. (*Id.* at ¶ 3.)

Defendant has a long history of violent offenses. Apart from DWI, public intoxication, and insurance fraud convictions, Defendant also has one arson, one burglary, and two theft convictions. (*Id.* at ¶¶ 35-39.) His PSR also reflects several other arrests, including nine charges of using bad checks, harassment, and an additional burglary arrest. (*Id.* at ¶¶ 41-45.) Based on Defendant's conduct and criminal history, the guideline range was 135 to 168 months. (*Id.* at ¶ 67.) This Court determined that a prison term of 168 months, to run consecutively with the sentence imposed in Cause No. 4972 of the 109th Judicial District Court, was sufficient but not greater than necessary. (Judgment 2, ECF No. 37.)

### B. Defendant's Current Term of Imprisonment

Defendant has now served 106 months, or 74.5%, of his current prison term. He is currently scheduled for release in December 2023. *See* Fed. Bureau of Prisons, Find an inmate, https://www.bop.gov/inmateloc/ (last visited December 23, 2020.)

Defendant is currently housed at Coleman Medium FCI. *See id.* At the time of filing, BOP reported 8 inmates testing positive for COVID-19 at Coleman Medium FCI. *See* Fed. Bureau of

Prisons, *COVID-19 Cases*, COVID-19 Coronavirus (Jan. 18, 2021.), https://www.bop.gov/coronavirus/. Although 3 inmates there have died of COVID-19, 321 inmates have recovered. *Id.*

    C.    **BOP's Response to COVID-19**

In response to the COVID-19 pandemic, BOP has modified its operations plan to protect the health of inmates at BOP facilities. *See* Fed. Bureau of Prisons, BOP Implementing Modified Operations, at https://www.bop.gov/coronavirus/covid19_status.jsp (last visited December 23, 2020.) Under this plan, BOP is limiting inmate movement to maximize social distancing; screening inmates involved in certain essential group activities; isolating and testing symptomatic inmates potentially exposed to the virus; and quarantining asymptomatic inmates potentially exposed. BOP is also testing new inmates and limiting movement between facilities (with exceptions for needed medical treatment, legal proceedings, and reducing overcrowding). BOP has suspended official staff travel and training (except for relocation travel and training for new staff) and has limited contractors to those providing essential services. Screening for staff and contractors entering BOP facilities includes temperature checks and self-reporting.

As vaccines have become available, BOP has begun administering them to staff and inmates. *See* Ctrs. for Disease Control, COVID-19 Vaccinations in the United States, https://covid.cdc.gov/covid-data-tracker/#vaccinations (last visiting Jan. 18, 2021). So far, BOP has received 16,750 doses and administered 16,685. *Id.* Although BOP has prioritized vaccinating correctional staff to guard against virus transmission into and out of prisons, the vaccine is also becoming available to inmates. *See* Fed. Bureau of Prisons, COVID-19 Vaccine Guidance 5 (Jan. 4 2021), https://www.bop.gov/recources/pdfs/2021_covid19_vaccine.pdf. Inmates are assigned priority based on factors such as job assignment, age, and medical condition. *Id.* at 5-7.

BOP also continues to designate prisoners who pose the least threat to the community to serve their terms of imprisonment in home confinement. Home confinement is not a sentence reduction; instead, BOP designates an inmate's residence as the place he or she will serve a term

of imprisonment. *See* 18 U.S.C. § 3624(c)(2); 34 U.S.C. § 60541. Under the Coronavirus Aid, Relief, and Economic Security Act (CARES Act), BOP may now "lengthen the maximum amount of time for which the Director is authorized to place a prisoner in home confinement." CARES Act, Pub. L. No. 116-136, § 12003, 134 Stat. 281, 516 (2020). The Attorney General has directed that BOP prioritize and maximize transfers to home confinement of inmates vulnerable to COVID-19 in appropriate circumstances.[1] BOP is devoting all available resources to carrying out that directive. As of this filing, BOP has transferred 19,225 inmates to home confinement. See Fed. Bureau of Prisons, *COVID-19 Home Confinement Information*, COVID-19 Coronavirus, https://www.bop.gov/coronavirus/ (last visited December 23, 2020.)

According to BOP, Defendant has not been considered for home confinement, likely because BOP is currently prioritizing home confinement placement for those individuals with a "minimal" risk-of-recidivism classification. Defendant has been assessed a low risk of recidivism evaluation.

### D. Administrative Requests and Consideration

In June and July 2020, Defendant submitted administrative requests for a sentence reduction. *See* Def. Mot. at 11, 12, 14, ECF No. 41. His requests were denied. *See id.* at 13, 16.

---

[1] *See* Memorandum from William P. Barr, Att'y Gen., to Michael Carvajal, Dir., Fed. Bureau of Prisons (Mar. 26, 2020), https://www.justice.gov/file/1262731/download; Memorandum from William P. Barr, Att'y Gen., to Michael Carvajal, Dir., Fed. Bureau of Prisons (Apr. 3, 2020), https://www.justice.gov/file/1266661/download. The March 26 memorandum directs BOP to consider the totality of the circumstances, including the following non-exhaustive list of factors: the age and vulnerability of the defendant to COVID-19; the security level of the defendant's facility; the defendant's conduct in prison; BOP's assessment of the defendant's recidivism risk; whether the defendant has a verifiable re-entry plan that prevents recidivism, maximizes public safety, and would result in a lower risk of contracting COVID-19; and the defendant's crime of conviction. BOP will not designate a defendant to home confinement if doing so would likely increase the risk of contracting COVID-19.

### E. Defendant's Current Motion

On November 30, 2020, Defendant filed a motion with this Court seeking a sentence reduction under § 3582(c)(1)(A). He argues that due to his health conditions and the conditions of confinement, he is predisposed to a severe infection from COVID-19.

### Argument

As the movant, Defendant bears the burden to establish that he should receive a sentence reduction. *See United States v. Jones*, 836 F.3d 896, 899 (8th Cir. 2016); *United States v. Green*, 764 F.3d 1352, 1356 (11th Cir. 2014). He has not done so. Defendant has exhausted administrative remedies and has shown the sort of medical condition (obesity) that could qualify as an extraordinary and compelling reason. But Defendant has failed to show he is not a danger to any other person or the community or that the statutory sentencing factors outlined in 18 U.S.C. § 3553(a) support a reduced prison term. This Court should also deny Defendant's alternative request for an order directing BOP to place him in home confinement.

### I. Defendant has not shown that he is not a danger to the safety of any other person or the community.

A defendant seeking a sentence reduction must show that a reduction "is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A). The applicable policy statement, section 1B1.13 of the Sentencing Guidelines, in turn requires that "the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." USSG § 1B1.13(2). Section 3142(g) directs a court to consider factors such as the nature and circumstances of the defendant's offense and the defendant's history and characteristics. 18 U.S.C. § 3142(g).

Defendant has not shown he would not pose a danger if released. Defendant admitted traveling from Texas to New Mexico in the hopes of seducing an underage boy for sexual activities. That he repeatedly did so, and used some force against the boy, serves to highlight the violent nature of Defendant's offense of conviction. The evidence also undermines any contention that

this is one-time event. Law enforcement officers found hundreds of images of child pornography, some involving boys as young as nine, and some videos involving Defendant himself.

In addition to his present offense of conviction, Defendant has a history of theft and burglary arrests and convictions, again underscoring Defendant's potential dangerousness to the public. Here, for instance, Defendant twice went to the boy's house in New Mexico. Defendant's history of theft and burglary coupled with the young age of his victim could have been a recipe for disaster for the items in the boy's parents' home. Although fortunately no such theft appears to have occurred, Defendant's criminal history suggests that there remains a compelling need to protect the public from him.

**II.     Defendant has not shown that the sentencing factors in 18 U.S.C. § 3553(a) support a reduced prison term.**

This Court must also consider the sentencing factors in 18 U.S.C. § 3553(a). *See* 18 U.S.C. § 3582(c)(1)(A); USSG § 1B1.13; *United States v. Chambliss*, 948 F.3d 691, 694 (5th Cir. 2020). At Defendant's sentencing, this Court determined that those factors supported his current sentence of 168 months to run consecutively with the sentence imposed in Cause No. 4972 of the 109th Judicial District Court. (Judgment 2.) Those factors continue to support that sentence rather than the 106-month sentence Defendant seeks.

- **Nature and circumstances of offense, § 3553(a)(1), and seriousness of offense, § 3553(a)(2)(A).** The nature, circumstances, and seriousness of Defendant's offense remain unchanged and reinforce the just nature of this Court's sentence. For a period of a year, Defendant used an online chatroom to connect with, exchange pictures with, and ultimately arrange an interstate visit with an underage boy living in New Mexico. He met the boy on at least two occasions for sexual conduct. In addition, Defendant possessed hundreds of images of child pornography, including images of young boys being ejaculated on, images of boys engaging in vaginal and anal penetration, and bondage scenes. Some of these

images depicted Defendant himself engaging in anal sex with these underage boys. (PSR ¶¶ 6, 7, 8, 11.)

- **Defendant's history and characteristics, § 3553(a)(1).** In addition to his present conviction, Defendant has several prior convictions, including for DWI, arson, burglary, theft, and harassment. (PSR ¶¶ 35-39.) He also has numerous other arrests for similar violent offenses. (*Id.* at ¶¶ 41-45.)

- **Need to protect public and deter further crimes, § 3553(a)(2)(B)-(C).** Defendant's present offense and his history of thefts and burglaries greatly undermine any argument that he is not a danger to the public.

- **Sentencing guidelines and unwarranted sentencing disparities, § 3553(a)(3)-(6).** The reduction Defendant seeks would ignore the sentencing guidelines and result in a sentence less than the 135 to 168 month sentence those guidelines recommended. (PSR ¶ 67.) By ignoring the guidelines, a reduced sentence would disregard the need to avoid unwarranted sentence disparities among similarly situated defendants. *See Hughes v. United States*, 138 S. Ct. 1765, 1774 (2018) ("A principal purpose of the Sentencing Guidelines is to promote uniformity in sentencing imposed by different federal courts for similar criminal conduct.") (cleaned up).

In sum, Defendant has failed to show that the sentencing factors in § 3553(a) support the reduced sentence he seeks.

### III. This Court lacks authority to direct BOP to place Defendant in home confinement.

This Court should also deny Defendant's alternative request for an order directing BOP to place him in home confinement. A prisoner has no constitutional right to confinement in any particular place, including in home confinement. *See Sandin v. Conner*, 515 U.S. 472, 478 (1995); *Meachum v. Fano*, 427 U.S. 215, 224 (1976). And federal statute grants BOP, not courts, the sole authority to determine the place of incarceration. 18 U.S.C. § 3621(b); *United States v. Voda*, 994

F.2d 149, 151-52 (5th Cir. 1993); *Moore v. U.S. Att'y Gen.*, 473 F.2d 1375, 1376 (5th Cir. 1973). Section 3582(c)(1)(A) permits a court to reduce prison term when a defendant meets all the criteria discussed above, but Defendant's request for designation to home confinement does not reduce any prison term.[2]

IV. **If this Court reduces Defendant's prison term to time served, it should impose a quarantine period before release.**

If this Court disagrees and grants a sentence reduction that results in Defendant's early release, the government requests that the Court's order accommodate the need to quarantine the defendant for a period of at least 14 days to protect public health. To ensure that pre-release quarantine occurs, this Court should advise the parties of its decision while retaining jurisdiction over the motion for 14 days. BOP will then place Defendant in quarantine. If Defendant has not displayed symptoms or tested positive for COVID-19 for a period of 14 days, this Court's sentence-reduction order will then issue. If Defendant instead tests positive during the 14-day period, the government will notify the Court and seek an extension of any release date until Defendant has tested negative and displayed no symptoms for at 14 days.

## Conclusion

For all these reasons, this Court should deny Defendant's motion. Should the Court instead grant the motion, this Court should ensure that its order allows for the 14-day quarantine period described above.

---

[2] If a court grants a sentence reduction, it "may impose a term of . . . supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment." § 3582(c)(1)(A). A court imposing a term of supervised release may require a period of home confinement as a condition of supervised release if the court finds that home confinement is a "substitute for imprisonment." USSG § 5F1.2; *see* 18 U.S.C. § 3583(d). But no sentence reduction is warranted, so this Court need not consider adding any term of supervised release.

Respectfully submitted,

Gregg N. Sofer
United States Attorney

By: /s/Kevin Eaton
Kevin Eaton
Assistant United States Attorney
Texas Bar No. 24105832
2500 N. Highway 118, Suite A-200
Alpine, Texas 79830
Telephone: (432) 837-7335
Facsimile: (432) 837-7449
E-mail: Kevin.Eaton@usdoj.gov

## Certificate of Service

 I certify that on January 18, 2021, I electronically filed this document with the Clerk of Court using the CM/ECF system.

 I also certify that I will mail this document by United States Postal Service to the following non-CM/ECF participant(s):

Paul Joseph Galvez
Reg. No. 17871280
Coleman Medium FCI
Federal Bureau of Prisons
P.O. Box 1032
Coleman, FL 33521

                */s/Kevin Eaton*
                Kevin Eaton
                Assistant United States Attorney